**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| TUBE-MAC INDUSTRIES, INC., GARY MACKAY, and DAN HEWSON, | ) ) ) | 2:19-cv-01192-RJC |
| Plaintiffs, | ) ) ) | |
| vs. | ) ) | Judge Robert J. Colville |
| STEVE CAMPBELL and TRANZGAZ, INC., | ) ) ) ) | |
| Defendants, | ) | |

**OPINION**

Robert J. Colville, United States District Court Judge.

Before the Court is the "Motion for Dismissal for Want of Jurisdiction and Lack of Consent in an Improper Forum" (ECF No. 49) filed by Defendant Steven Campbell ("Campbell"). Campbell asserts that this Court does not have personal jurisdiction over Campbell, and that the Western District of Pennsylvania is an improper forum for resolution of Plaintiffs' claims. This matter has been fully briefed and is now ripe for consideration.

**I. Factual Background**

Plaintiffs brought the instant action seeking correction of inventorship of United States Patent No. 9,376,049 B2 ("the '049 Patent"). The '049 Patent was issued on June 28, 2016, and is titled "Method of Fabricating Type 4 Cylinders and Arranging in Transportation Housings for Transport of Gaseous Fluids." Am. Compl. ¶ 10, ECF No. 11. The '049 Patent identifies Campbell as the sole inventor of the system set forth in the '049 Patent. Am. Compl. Ex. 1, ECF No. 11-1. The '049 Patent contains fifteen claims, with Claim 1 being the only independent claim. Am. Compl. ¶ 14. Claim 1 provides as follows:

1. A lightweight intermodal container or road trailer based system for transporting refrigerated gaseous fluids, comprising:

an enclosed and insulated transportation housing; a plurality of low-temperature resistant pressure vessels at least three feet in diameter secured within said transportation housing for containing said gaseous fluids, each of said pressure vessels including a body portion and opposing domed end portions attached to said body portion, each of said domed end portions having a wall thickness that is greater than a wall thickness of said body portion and an opening; and

at least one *port boss* affixed to each of said domed end portions, said at least one port boss including an inner component and an outer component, said inner component including an inner pipe and an inner plate transversely extending from said inner pipe, and said outer component including an outer pipe and an outer plate transversely extending from said outer pipe, wherein said inner pipe is inserted through said opening in each of said domed end portions and through said outer pipe such that said inner component and said outer component are compressed together to cause said inner plate to engage an inner surface of a respective one of said domed end portions and said outer plate to engage an outer surface of said respective one of said domed end portions to affix said at least one port boss to each of said domed end portions.

Am. Compl. ¶ 14 (emphasis added).

Plaintiffs Tube-Mac Industries, Inc., Gary Mackay, and Dan Hewson (collectively, "Plaintiffs") allege that Campbell did not solely invent the "port boss" referenced in Claim 1. Am. Compl. ¶ 15. Plaintiffs allege that Plaintiffs Gary Mackay ("Mackay") and Dan Hewson ("Hewson") conceived of and then demonstrated to Campbell the compression method discussed in Claim 1. *Id.* Plaintiffs further allege that, in 2007, Campbell vocalized a concern to Mackay and Hewson with respect to the seal achieved by the then existing port boss and the fiberglass vessel used to store and transport compressed gas, and that Campbell asked Mackay and Hewson if they could help solve this issue. *Id.* at ¶ 16. Plaintiffs allege that Mackay and Hewson designed and made a new port boss, showed the port boss to Campbell, and demonstrated to Campbell how the new port boss could be connected to the fiberglass vessel. Am. Compl. ¶¶ 17-18. Plaintiffs further allege that Figures 5-7 of the '049 Patent are drawings of the port boss that was created by

Mackay and Hewson in response to Campbell's request. *Id.* at ¶ 20. Plaintiffs aver that, for these

reasons, Mackay and Campbell are joint inventors of the system claimed in the '049 Patent. *Id.* at

¶ 22. Plaintiffs allege that Plaintiffs asked Campbell to add Mackay and Hewson as co-inventors

of the '049 Patent, but that Campbell refused to do so. *Id.* at ¶ 28.

Plaintiff Tube-Mac Industries, Inc. ("Tube-Mac") is a Pennsylvania corporation having an

address at 420 Halstead Blvd., Zelienople, PA 16063. Am. Compl. ¶ 2. Tube-Mac manufactures

and sells pipe couplings, and Plaintiffs allege that Tube-Mac has the ability to manufacture the

port boss purportedly created by Mackay and Hewson as well as the system for transporting

gaseous fluids set forth in the '049 Patent. *Id.* at ¶ 24. Plaintiffs allege that Tube-Mac has had,

and continues to have, opportunities to manufacture the port boss allegedly create by Mackay and

Hewson for use in the system claimed in the '049 Patent, but cannot pursue these opportunities

because it is barred by the '049 Patent from doing so. *Id.* at ¶ 25. Plaintiffs further allege that

Mackay and Hewson have an obligation to assign their patent rights in the port boss and the system

claimed by the '049 Patent to Tube-Mac, and that none of the Plaintiffs have assigned those patent

rights to Campbell or to Defendant Tranzgaz, Inc. ("Tranzgaz"). Am. Compl. ¶ 26. Plaintiffs aver

that Tube-Mac will be able to make and sell the system claimed in the '049 Patent if Mackay and

Hewson are added as co-inventors of the '049 Patent. *Id.* at ¶ 27. Plaintiffs' Amended Complaint

asserts a single claim for Correction of Inventorship of U.S. Patent No. 9,376,049 B2. Am. Compl.

7.

## II. Procedural History

Prior to filing the instant Motion, Campbell had filed several pro se motions seeking

various forms of relief in this matter. *See* ECF Nos. 13, 14, 15, 18, 22, 24, 26, 29, 30. While each

of Campbell's previous motions was denied, such denial was without prejudice. *See* Order of Ct.

¶ 2, ECF No. 26 ("The Court notes that Mr. Campbell has already filed several pro se motions that facially do not provide a legal basis for relief.  The Court has denied those motions without prejudice so that, in the event Mr. Campbell retains counsel, his counsel is not prevented from submitting substantively similar motions.").

This case was reassigned to the undersigned on February 4, 2020.  ECF No. 43.  On February 13, 2020, this Court entered a Memorandum Order of Court (ECF No. 47) which directed the Clerk of Courts to enter default with respect to Tranzgaz based upon Transgaz's failure to plead.  Mem. Order of Ct. ¶ 2, ECF No. 47.  The Court's February 13, 2020 Memorandum Order also permitted Campbell a final opportunity to respond, by March 4, 2020, to Plaintiffs' Amended Complaint.  *Id.* at ¶ 3.  Campbell filed the Motion at issue, styled as a "Response to Amended Claim and Motion for Dismissal for Want of Jurisdiction and Lack of Consent in an Improper Forum" (ECF No. 49), on February 17, 2020.[1]  Plaintiffs filed a Response in Opposition (ECF No. 52) to Campbell's Motion on February 26, 2020.  On March 12, 2020, this Court entered an Order (ECF No. 58) that directed the parties to submit supplemental briefing with respect to the issue of personal jurisdiction, and specifically directed the parties to address: 1) the legal bases supporting the parties' respective arguments regarding personal jurisdiction; 2) the necessity of jurisdictional discovery; and 3) the applicability and effect of 35 U.S.C. § 293 in the instant matter.[2]  March 12, 2020 Order of Ct. ¶ 2, ECF No. 58.  Plaintiffs and Campbell submitted briefing in compliance with this Order on March 19, 2020 (ECF Nos. 59 and 60).  In addition, each party also submitted an unsolicited second brief thereafter (ECF Nos. 60 and 61).

---

[1] Campbell also filed an "Amended and Continued Response to Amended Complaint for Correction of Ownership" (ECF No. 54) on March 4, 2020.

[2] The Court's March 12, 2020 Order of Court further informed the parties that, "[a]s it is clear that Campbell has not retained counsel, and that he has filed [his Motion for Dismissal] in response to this Court providing him a final opportunity to respond to Plaintiffs' Amended Complaint, the Court will now consider the merits of the arguments set forth in the Motion for Dismissal."  March 12, 2020 Order of Ct. ¶ 1, ECF No. 58.

In his Motion, Campbell asserts that he is a Canadian citizen, and that he has no contacts with Pennsylvania.  Mot. for Dismissal 3 n.4.  Campbell argues that, accordingly, this Court does not have personal jurisdiction over him.  Campbell further asserts that all of the events at issue in Plaintiffs' Amended Complaint took place in Canada, not in Pennsylvania.  *Id.* at 4.  Campbell argues that Tube-Mac has not alleged a justiciable injury, and that Mackay and Hewson, who Campbell concedes have set forth such an injury, are Canadians who cannot be injured in Pennsylvania by activities or omissions which occurred outside of Pennsylvania.  Mot. for Dismissal 2 n.2-3; 5; 11, ECF No. 49.  Campbell further argues that he has not consented to this Court's jurisdiction in this matter, and that Campbell and Plaintiffs mutually consented to a venue clause which provided that the sole convenient forum for dispute resolution is Ontario, Canada.  *Id.* at 4 n.6, ECF No. 49.

### III. Legal Standard

While Campbell does not specifically set forth the statutory basis for his Motion for Dismissal, it is clear that the Motion challenges subject-matter jurisdiction, personal jurisdiction, and venue.  It also seems to assert that Tube-Mac has not stated a claim against Campbell.  *See* "Motion for Dismissal for Want of Jurisdiction and Lack of Consent in an Improper Forum" at 2 n.2-3, ECF No. 49.  Thus, the present "Motion for Dismissal" seeks relief pursuant to Fed. R. Civ. P. 12(b)(1)-(3) and (6).

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) in a patent law case, district courts apply Federal Circuit law.  *See Akro Corp. v. Luker*, 45 F.3d 1541, 1543 (Fed. Cir. 1995) (citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1564, 30 USPQ2d 1001, 1006 (Fed.Cir.)) ("We apply the law of the Federal Circuit, rather than that of the regional circuit in which the case arose, when we determine whether the district court properly

declined to exercise personal jurisdiction over an out-of-state accused infringer."); *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1362 (Fed. Cir. 2006) ("Here, the district court correctly applied Federal Circuit law governing personal jurisdiction to all claims because the question of infringement is a critical factor in determining liability under the non-patent claims.").  Where a district court does not hold an evidentiary hearing with respect to personal jurisdiction:

> A plaintiff need only make a prima facie showing of jurisdiction to survive the motion to dismiss.  To make that showing, [plaintiff] need only demonstrate facts that, if true, would support jurisdiction over the Defendants. Unless directly contravened, [plaintiff's] version of the facts is taken as true, and conflicts between the facts contained in declarations submitted by the two sides must be resolved in [plaintiff's] favor for purposes of deciding whether a prima facie case for personal jurisdiction exists.

*Campbell Pet Co. v. Miale*, 542 F.3d 879, 888 (Fed. Cir. 2008) (quoting *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857 (9th Cir.2003)).

## IV. Discussion

### A.  Subject Matter Jurisdiction

An in-depth analysis of the Court's subject matter jurisdiction in this action is not warranted, as this Court clearly has subject matter jurisdiction over Plaintiffs' patent law claim pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338.

### B.  Personal Jurisdiction

Plaintiffs do not assert that this Court has general personal jurisdiction over Campbell, nor do they allege any facts to support a finding of general jurisdiction.  Rather, Plaintiffs argue that this Court has specific personal jurisdiction over Campbell.

Specific jurisdiction is appropriate only if the plaintiff's cause of action arises out of a defendant's forum-related activities, "such that the defendant 'should reasonably expect being

haled into court'" in that forum.  *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prod. Inc.,* 75 F.3d 147, 151 (3d Cir. 1996) (quoting *Worldwide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)).  With respect to specific personal jurisdiction, the United States Court of Appeals for the Federal Circuit has explained:

> In determining whether specific jurisdiction may be exercised over a non-consenting out-of-state defendant, a district court must undertake a two-part inquiry.  First, the state long-arm statute must permit service of process on the defendant.  *See* Fed.R.Civ.P. 4(e), 4(k)(1)(A).  Second, the exercise of personal jurisdiction must satisfy due process requirements.  *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–76, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985).  The Due Process Clause requires that there exist sufficient "minimum contacts" such that maintenance of the suit does not offend "traditional notions of fair play and substantial justice".  *Id.* at 476–78, 105 S.Ct. 2174.

*Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1361 (Fed. Cir. 2006).

The Pennsylvania long-arm statute provides that: "the jurisdiction of the tribunals of this Commonwealth shall extend to all persons . . . to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States."  42 Pa.C.S.A. § 5322(b); *Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 490 (3d Cir. 1985).  The reach of the Pennsylvania long-arm statute is thus "coextensive" with the due process clause.  *North Penn Gas Co. v. Corning Nat. Gas Corp.*, 897 F.2d 687, 689 (3d Cir. 1990).  The due process clause permits the court to assert personal jurisdictional over a nonresident defendant who has "certain minimum contacts with [the forum] such that the maintenance of [a] suit does not offend traditional notions of fair play and substantial justice."  *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotations omitted).

In determining whether the exercise of specific personal jurisdiction satisfies the requirements of due process, Federal Circuit law "employs a three-prong test, in which we

determine whether: (1) the defendant purposefully directed its activities at residents of the forum, (2) the claim arises out of or relates to those activities, and (3) assertion of personal jurisdiction is reasonable and fair." *Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1363 (Fed. Cir. 2006) (citing *Akro Corp. v. Luker*, 45 F.3d 1541, 1545-46 (Fed. Cir. 1995)).

Plaintiffs assert that this Court has personal jurisdiction over Campbell "under the Pennsylvania long-arm statute because the issuance of the '049 Patent has caused harm to Tube-Mac in this district." Am. Compl. ¶ 8, ECF No. 11.  Plaintiffs argue that Campbell, in obtaining a United States patent, received the right to prevent others, including Plaintiffs, from making, using, or selling the system set forth in the '049 Patent in Pennsylvania.  Pls.' Opp'n. to Mot. for Dismissal 5; ECF No. 52.  Plaintiffs argue that the act of obtaining a patent constitutes sufficient contact with Pennsylvania to allow this Court to exercise specific personal jurisdiction over Defendant.  *Id*.

In Plaintiffs' "Opposition to Defendants' Motion to Dismiss" (ECF No. 60),[3] Plaintiffs seemingly abandon their argument respecting Campbell's contacts with Pennsylvania, and instead assert that Campbell is not subject to jurisdiction in any state's courts of general jurisdiction, and that, accordingly, Federal Rule of Civil Procedure 4(k)(2) applies in this matter.  Opp'n 2; ECF No. 60.  Plaintiffs assert that the act of obtaining a United States patent is sufficient contact with the United States as a whole such that personal jurisdiction may be asserted by this, or presumably any, district court over Campbell.  *Id.* at 6-7.

### 1.  Campbell's Contacts with Pennsylvania

Initially, upon review of Plaintiffs' Amended Complaint and all briefing related to the pending Motion for Dismissal, it is readily apparent that Plaintiffs have not set forth any facts or

---

[3] This Opposition was filed in response to this Court's March 12, 2020 Order which directed the parties to submit supplemental briefing with respect to the issue of personal jurisdiction.

evidence that establish that Campbell directed activities specifically towards residents of Pennsylvania.  Plaintiffs do not allege that any of the actions which led to the invention of the system set forth in the '049 Patent took place in Pennsylvania, or that Campbell has marketed the system or attempted to enforce the '049 Patent in Pennsylvania.  Rather, Plaintiffs assert that Campbell, in obtaining a United States patent, received the right to prevent others from making, using, or selling the system set forth in the '049 Patent in Pennsylvania, as well as in all other states.  This action alone does not constitute sufficient contact with *this Commonwealth* such that this Court can exercise jurisdiction over Campbell.  *See Venmill Indus., Inc. v. ELM, Inc.*, 100 F. Supp. 3d 59, 72 (D. Mass. 2015) (emphasis added) (quoting *Nat'l Patent Dev. Corp. v. T.J. Smith & Nephew Ltd.*, 877 F.2d 1003, 1009–10 (D.C. Cir. 1989)) (internal citations omitted) ("By registering a patent with the United States Patent and Trademark Office—located in the Eastern District of Virginia—a foreign patentee 'purposefully avails itself of the benefits and protections patent registration in this country affords.'  *It is therefore fair and reasonable, in actions concerning the patent, to subject the party to the jurisdiction of the federal court where the U.S. Patent and Trademark Office is located.*").  *See also Breckenridge Pharm., Inc. v. Metabolite Labs., Inc.*, 444 F.3d 1356, 1362-66 (Fed. Cir. 2006) (discussing what contacts with a forum may support a district court's exercise of personal jurisdiction over a defendant).  Accordingly, this Court finds that Plaintiffs fail to set forth a prima facie case that Campbell's contacts with Pennsylvania support this Court's exercise of personal jurisdiction over Campbell.

### 2.   35 U.S.C. § 293

The Court notes that, in cases affecting a patent owned by a foreign patentee defendant such as the present case, 35 U.S.C. § 293 provides a statutory basis for personal jurisdiction over the patentee.  Section 293 of the U.S. Code Title 35 provides:

> Every patentee not residing in the United States may file in the Patent and Trademark Office a written designation stating the name and address of a person residing within the United States on whom may be served process or notice of proceedings affecting the patent or rights thereunder.  If the person designated cannot be found at the address given in the last designation, or if no person has been designated, the United States District Court for the Eastern District of Virginia shall have jurisdiction and summons shall be served by publication or otherwise as the court directs.  The court shall have the same jurisdiction to take any action respecting the patent or rights thereunder that it would have if the patentee were personally within the jurisdiction of the court.

35 U.S.C. § 293.  With respect to personal jurisdiction, Federal Rule of Civil Procedure 4(k)(1)

provides:

> (1) In General. Serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant:
>
> . . . .
>
> (C) when authorized by a federal statute.

Fed. R. Civ. P. 4(k)(1).  In discussing the statutory jurisdiction provided by 35 U.S.C. § 293, the

United States Court of Appeals for the Federal Circuit has explained:

> Although we expressed concerns in *Viam* regarding improper attempts by foreign patentees to shield themselves from domestic litigation*, e.g.*, [*Viam Corp. v. Iowa Export–Import Trading Co.*, 84 F.3d 424, 430 (Fed.Cir.1996)] (expressing concern that foreign patentees "would be able to set up domestic fronts through which they could do business without subjecting their patents to the rigorous scrutiny demanded by United States patent law"), we cannot ignore the framework for determining jurisdiction within a given forum, *see* [*World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)] (noting that the Supreme Court has "never accepted the proposition that state lines are irrelevant for jurisdictional purposes").  Moreover, a district court's refusal to exercise personal jurisdiction over a foreign patentee in a particular state does not foreclose the availability of a domestic forum.  *By statute, every foreign patentee is subject to jurisdiction in at least one state or in the District of Columbia.*

*Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1339 (Fed. Cir. 2008) (emphasis

added).[4]

---

[4] The Court notes that "Section 293 was amended in 2011 to designate the United States District Court for the Eastern District of Virginia as the fallback venue, rather than the United States District Court for the District of Columbia,

Plaintiffs argue that 35 U.S.C. § 293 is inapplicable in this matter because Campbell has designated an address for service pursuant to Section 293. Pls.' Opp'n to Def.'s Resp. 2, ECF No. 62. Plaintiffs assert that the email correspondence attached as Exhibit A to "Defendant's Response to Plaintiffs['] Brief Pursuant to Order 58" (ECF No. 61)[5] "does not refute the records of the United States Patent and Trademark Office showing that Mr. Campbell provided to the Office a United States address as the 'Correspondence Address' for service[,]" and further assert that, therefore, "35 U.S.C § 293 does not apply to this case."[6] *Id.* Plaintiffs are correct that jurisdiction is not appropriate in the United States District Court for the Eastern District of Virginia if a patentee has designated an agent for service pursuant to Section 293 who resides outside of the Eastern District of Virginia. The act of designating an agent (or agents) for service in a forum (or multiple forums) within the United States pursuant to Section 293, however, does not render Section 293 inapplicable, but rather serves to confer jurisdiction over the foreign patentee to the appropriate district court in the designated forum(s).

In the case of *In re Papst Licensing GMBH & Co. KG Litig*, a plaintiff asserted that, because a patentee had been subject to 35 U.S.C. § 293 personal jurisdiction in the United States District Court for the District of Columbia in previous litigation, the patentee remained subject to such jurisdiction. *In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 100 (D.D.C. 2008). The United States District Court for the District of Columbia explained that the patentee

---

presumably because the United States Patent and Trademark Office is located in this district." *TomTom, Inc. v. AOT Sys. GmbH*, 893 F. Supp. 2d 785, 788 (E.D. Va. 2012) (citing Pub. L. 112–29, § 9(a), Sept. 16, 2011, 125 Stat. 316).

[5] In this email correspondence, an attorney for the law firm listed in the "Correspondence Address" on the "Public Patent Application Information Retrieval" page for the '049 Patent informed Campbell that the attorney could not be a "designated resident." Def.'s Resp. to Pls.' Br. Pursuant to Order 58, Ex. A, ECF No. 62. The Court notes that this correspondence is ultimately irrelevant, and in no way factors into the Court's determination as to whether Campbell designated an agent for service pursuant to 35 U.S.C. § 293.

[6] The Court notes that Plaintiffs' argument that Campbell has designated an agent for service in the United States, which shall be further addressed below, is seemingly belied by Plaintiffs' own Opposition Brief. *See* Opp'n 10, ECF No. 60 (emphasis added) ("There is no service of process type issue here. Mr. Campbell and Tranzgaz were found *in Canada* and properly served.").

was subject to such jurisdiction in previous litigation "because it had failed to name a U.S. resident

as an agent for service of process under 35 U.S.C. § 293," and further explained:

> However, on June 27, 2007, Papst named a U.S. resident as its agent.  The agent
> resides in the Northern District of Illinois. Papst now has consented to personal
> jurisdiction in the Northern District of Illinois, and § 293 no longer provides a basis
> for personal jurisdiction in the District of Columbia.

*In re Papst Licensing GMBH & Co. KG Litig.*, 590 F. Supp. 2d 94, 100 (D.D.C. 2008).  *See also*

*TomTom, Inc. v. AOT Sys. GmbH*, 893 F. Supp. 2d 785, 788 (E.D. Va. 2012) (the United States

District Court for the Eastern District of Virginia explained that, pursuant to 35 U.S.C. § 293,

"personal jurisdiction is proper over a foreign patentee either in the state where the patentee has

designated an agent to receive service of process or in the Eastern District of Virginia.");  *Avocent*

*Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1339 (Fed. Cir. 2008) ("Moreover, a district

court's refusal to exercise personal jurisdiction over a foreign patentee in a particular state does

not foreclose the availability of a domestic forum.  By statute, every foreign patentee is subject to

jurisdiction in at least one state or in the District of Columbia.");  *U. S. Indus., Inc. v. Maclaren*,

No. CIV.A. 75-2086, 1976 WL 21010, at \*3 (D.D.C. Apr. 30, 1976) ("In this case [defendant]

attempted to avail himself of the forum selection opportunity afforded by § 293.").  In light of the

above, Plaintiffs are incorrect that Section 293 is inapplicable if Campbell has designated an agent

for service within the United States, as Section 293 confers jurisdiction regarding patents or rights

thereunder to the appropriate district court in the state set forth in a patentee's written designation

or to the United States District Court for the Eastern District of Virginia.

     The Court notes that 35 U.S.C. § 293 does not provide that either the United States District

Court for the Eastern District of Virginia or the appropriate district court in the patentee's

designated state possesses *exclusive* jurisdiction over foreign patentees.  *See Asia Vital*

*Components Co. v. Asetek Danmark A/S*, No. 1:14-CV-1293, 2016 WL 9175601, at \*2 (E.D. Va.

Dec. 13, 2016) "([N]othing in § 293 'requires' suits to be brought in this district.").  Thus, if a district court may exercise personal jurisdiction over a defendant, transfer is not necessarily appropriate, and dismissal is clearly not appropriate, on the basis of the jurisdiction provided by 35 U.S.C. § 293.

Section 293, however, clearly anticipates situations where the only allegation supporting personal jurisdiction in a United States district court is that a foreign patentee registered a patent with the United States Patent and Trademark Office.  In *Nat'l Patent Dev. Corp. v. T.J. Smith & Nephew Ltd.*, the United States Court of Appeals for the District of Columbia Circuit, in discussing the personal jurisdiction provided by 35 U.S.C. § 293, explained:

> By registering a patent in the United States Patent and Trademark Office, a party residing abroad purposefully avails itself of the benefits and protections patent registration in this country affords. *It is therefore fair and reasonable to require such a party to respond here—i.e., in federal court in our nation's capital, where the party has registered its patents—in proceedings, whether arising under federal or state law, concerning the U.S.-registered patent.*

*Nat'l Patent Dev. Corp. v. T.J. Smith & Nephew Ltd.*, 877 F.2d 1003, 1009-10 (D.C. Cir. 1989) (emphasis added) (footnote omitted) (internal citations omitted).  *See also Japan Gas Lighter Ass'n v. Ronson Corp.*, 257 F. Supp. 219, 228 (D.N.J. 1966) "(If a non-resident patentee neither appointed an agent to receive service, nor has sufficient contacts with any other district, use of § 293 would be essential to obtain any adjudication of rights under his patent.").

### 3.  Fed. R. Civ. P. 4(k)(2)

Plaintiffs argue that this Court should exercise personal jurisdiction over Campbell pursuant to Fed. R. Civ. P. 4(k)(2) because Campbell is not subject to personal jurisdiction in any state.  Fed. R. Civ. P. 4(k)(2) provides:

> (2) Federal Claim Outside State-Court Jurisdiction. For a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

> (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and
>
> (B) exercising jurisdiction is consistent with the United States Constitution and laws.

Fed. R. Civ. P. 4(k)(2).   In order for a court to exercise personal jurisdiction over a foreign defendant pursuant to Fed. R. Civ. P. 4(k)(2):

> (1) there must be a claim arising under federal law; (2) the defendant must be beyond the jurisdictional reach of any state court of general jurisdiction; and (3) the defendant must have sufficient contacts with the United States as a whole so that the court's exercise of personal jurisdiction over the defendant comports with the due process requirements of the Constitution or other federal law.

*Skold v. Galderma Labs., L.P.*, 99 F. Supp. 3d 585, 603 (E.D. Pa. 2015).  "Rule 4(k)(2) was adopted to ensure that federal claims will have a U.S. forum if sufficient national contacts exist."  *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1295 (Fed. Cir. 2009) (citing Fed. R. Civ. P. 4(k)(2) advisory committee notes to 1993 amendment).

Plaintiffs assert that the act of obtaining a United States patent with incorrect inventorship alone is a sufficient contact with the United States as a whole such that jurisdiction in this, or presumably any, district is appropriate in the instant case. Opp'n 6-7; ECF No. 60.  Were Plaintiffs correct that Federal Rule of Civil Procedure 4(k)(2) provides any district court with jurisdiction over a foreign patentee who does not have sufficient contacts in any state in an action involving the foreign patentee's patent simply because that foreign patentee availed himself or herself of the laws of the United States by way of obtaining a United States patent, the jurisdiction provided by 35 U.S.C. § 293 would be rendered superfluous.  In essence, there would be no need for a statutory provision providing for personal jurisdiction over a foreign patentee in a designated state or in the United States District Court for the Eastern District of Virginia if the acquisition of a United States patent by a foreign patentee constitutes sufficient contacts with the entire United States such that

14

jurisdiction is appropriate in any state.  *See Venmill Indus., Inc. v. ELM, Inc.*, 100 F. Supp. 3d 59, 72 n.9 (D. Mass. 2015) ("By creating jurisdiction in a federal forum, section 293 already remedied—with respect to foreign patentees—the precise problem that 4(k)(2) was enacted to fix.").

Further, the Federal Circuit has not applied Rule 4(k)(2) when faced with similar issues involving foreign patentee defendants who possess limited or nonexistent contacts with any individual state, but rather has directed parties to the availability of statutory jurisdiction pursuant to 35 U.S.C. § 293.  *See Avocent Huntsville Corp. v. Aten Int'l Co.*, 552 F.3d 1324, 1339 (Fed. Cir. 2008) ("Moreover, a district court's refusal to exercise personal jurisdiction over a foreign patentee in a particular state does not foreclose the availability of a domestic forum.  By statute, every foreign patentee is subject to jurisdiction in at least one state or in the District of Columbia."); *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021 (Fed. Cir. 2009) (citing U.S.C. 35 § 293) ("Jurisdiction over foreign patentees like Oxford continues to be available in the United States District Court for the District of Columbia."); *Venmill Indus., Inc. v. ELM, Inc.*, 100 F. Supp. 3d 59, 71 (D. Mass. 2015) (discussing *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1021 (Fed. Cir. 2009)) ("In reaching this conclusion the panel majority [in *Autogenomics*] chose not to apply Rule 4(k)(2)-despite the dissenting opinion's assertion that, pursuant to the Federal Circuit's decision in [*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285 (Fed. Cir. 2009)], the rule provided an avenue for jurisdiction.").[7]  *See also Xilinx,*

---

[7] The Court appreciates the distinction between the present case, which involves an allegation of misuse of the U.S. patent system by a Defendant who allegedly failed to include all inventors in his patent application, and a declaratory judgment action against a foreign patentee asserting noninfringement of a legitimate United States patent.  The Court notes, however, that in *Avocent* and *Autogenomics*, the plaintiffs also sought declaratory judgment as to patent invalidity against a defendant.  By asserting invalidity, plaintiffs in those cases similarly asserted that a defendant has misused the patent system by obtaining or maintaining a patent which does not satisfy the requirements of the Patent Act.  Further, the Court in *Nat'l Patent* explained: "As Judge Leventhal observed, this statement indicates that although 'American manufacturers threatened with charges of infringement are identified as being "especially handicapped" by present lack of service capability, ... they were not the sole beneficiaries of the legislation.'"  *Nat'l Patent Dev.*

*Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1356 n.3 (Fed. Cir. 2017) (citing 35 U.S.C. § 293) (finding sufficient contacts in the forum state, but also explaining that "[a]bsent an ability to litigate its declaratory judgment action in California, Xilinx would be remitted to litigating on the opposite side of the country in the United States District Court for the Eastern District of Virginia, the statutory venue for actions against patentees not residing in the United States."); *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1412 n.3 (Fed. Cir. 2009) (performing a Fed. R. Civ. P. 4(k)(2) analysis, but explaining that: "[t]his malpractice suit, where the patent owner is the plaintiff, is not a case to which 35 U.S.C. § 293 applies, where jurisdiction over a foreign patentee is provided for proceedings affecting the patent.").[8]

District courts, applying Federal Circuit law, have come to different conclusions with respect to whether a court should engage in a Fed. R. Civ. P. 4(k)(2) analysis where 35 U.S.C. § 293 provides for jurisdiction over a foreign patentee, mostly in addressing whether a district court is a "court of general jurisdiction." *See Venmill Indus., Inc. v. ELM, Inc.*, 100 F. Supp. 3d 59, 69 (D. Mass. 2015) (quoting *Pharmachemie B.V. v. Pharmacia S.p.A.*, 934 F.Supp. 484, 488 (D.Mass.1996)) (internal citations and quotations omitted) ("However, federal courts are of

---

*Corp. v. T.J. Smith & Nephew Ltd.*, 877 F.2d 1003, 1008 (D.C. Cir. 1989) (quoting *Neidhart v. Neidhart S.A.*, 510 F.2d 760 (D.C.Cir.1975) (Leventhal, J., dissenting)). The Court concludes that 35 U.S.C. § 293 applies to Campbell in the same manner that it applied to the defendants in *Avocent* and *Autogenomics*.

[8] In *Touchcom, Inc. v. Bereskin & Parr*, the United States Court of Appeals for the Federal Circuit explained:

> Appellees entered into a contractual agreement to obtain U.S. patent protection for Touchcom. That agreement contemplated and resulted in appellees seeking and obtaining a U.S. patent. In doing so, appellees were required to be registered patent agents, submit documents to the USPTO, and perfect their client's patent application before that agency. It stands to reason that one who has sought and obtained a property interest from a U.S. agency has purposefully availed itself of the laws of the United States.

*Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1416 (Fed. Cir. 2009). The Court notes that *Touchcom* is distinguishable from the instant action as *Touchcom* involved a malpractice suit against the attorneys who filed the patent application, and not a foreign patentee. Further, in concluding that the defendant was not subject to jurisdiction under Fed. R. Civ. P. 4(k)(1) in federal court in Virginia, and directly prior to beginning its Fed. R. Civ. P. 4(k)(2) analysis, the *Touchcom* court explained that "[t]his malpractice suit, *where the patent owner is the plaintiff, is not a case to which 35 U.S.C. § 293 applies*, where jurisdiction over a foreign patentee is provided for proceedings affecting the patent." *Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403, 1412 n.3 (Fed. Cir. 2009) (emphasis added).

limited, not general jurisdiction.  As Judge Gorton has observed, this Court is 'not free to disregard the plain language of [Rule 4(k)(2) ], which applies, by its terms, in a federal question case to a foreign defendant not subject to the jurisdiction of the courts of *general jurisdiction* of any state.' Thus, a defendant cannot avoid application of the rule by pointing to the federal forum designated by 35 U.S.C. § 293."); *Early Learning Res., LLC v. Sebel Furniture Ltd., No. CIV. 10-6335 NLH JS*, 2011 WL 4593775, at \*6 n.2 (D.N.J. Sept. 30, 2011) (citing *Pharmachemie B.V. v. Pharmacia S.p.A.*, 934 F.Supp. 484, 488 (D.Mass.1996); *CytoSport, Inc. v. Cytogenix Sports Laboratories, SRL*, No. 2:10–700, 2010 WL 5418883, at \*4 n. 2 (E.D.Cal. Dec.23, 2010)) ("There is some question whether the United States District Court for the District of Columbia is a 'state court of general jurisdiction' as contemplated by Rule 4(k)(2).").  *But see NXP Semiconductors USA, Inc. v. Brevets*, No. C 14-1225 SI, 2014 WL 4621017, at \*13 (N.D. Cal. Sept. 15, 2014) (*citing Touchcom, Inc. v. Bereskin & Parr*, 574 F.3d 1403 (Fed. Cir. 2009)) (holding, after considering a defendant's argument that Rule 4(k)(2) was inapplicable because 35 U.S.C. § 293 provides for jurisdiction in the Eastern District of Virginia, that "Plaintiff does not dispute that it could have brought its declaratory relief claims regarding the '419 patent against INSIDE Secure in the Eastern District of Virginia.  Rule 4(k)(2) is inapplicable where there is 'a suitable forum in which the plaintiff could have brought suit.'").

Plaintiffs do not cite to, and this Court has not found, binding precedent that establishes that a district court should, in an action involving a patent or rights thereunder, apply both 35 U.S.C. § 293 ("the patent long-arm statute") and Fed. R. Civ. P. 4(k)(2) ("the federal long-arm statute") to a foreign patentee who does not have sufficient contacts with any state and whose only contact with the United States as a whole is the acquisition of a United States patent.  This precise scenario seems to be that which 35 U.S.C. § 293 was enacted to address.  The above-cited Federal

Circuit precedent indicates, at least implicitly, that where the only basis for the exercise of personal jurisdiction over a foreign patentee who does not have sufficient contacts with any individual state are the bases set forth in 35 U.S.C. § 293, i.e. that the suit involves the patent at issue or rights thereunder and is against a foreign patentee who availed himself or herself of the laws of the United States only by obtaining a patent from the United States Patent and Trademark Office, Section 293, and not Fed. R. Civ. P. 4(k)(2), provides which forum may exercise jurisdiction over the foreign patentee. This case involves a claim for correction of inventorship of the '049 Patent and seeks relief pursuant only to United States patent law, and thus clearly involves a "patent or rights thereunder." Plaintiffs fail to set forth that Campbell had sufficient contacts with this, or any, state. Accordingly, 35 U.S.C. § 293 dictates which court may exercise personal jurisdiction over Campbell.

While not the basis for its decision in *Venmill Indus., Inc. v. ELM, Inc.*, the United States District Court for the District of Massachusetts also explained:

> The Court notes that 35 U.S.C. § 293 may itself make the exercise of jurisdiction in this case inconsistent "with the United States ... laws," thereby providing an independent basis for precluding the application of 4(k)(2). Rule 4(k)(2) was enacted in 1993 to ensure that non-resident defendants with significant ties to the United States, but insufficient contacts to support jurisdiction under any state long-arm statute, could not already escape the enforcement of federal law. [*Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1295-96 (Fed. Cir. 2009)]. However, Rule 4 also recognizes that Congress may authorize jurisdiction in the federal courts by statute. *See* Fed.R.Civ.P. 4(k)(1)(C). One such statute is 35 U.S.C. § 293, which was enacted in 1952 to "assure[ ] a forum for suit in the United States in [patent] cases that might not be accommodated by either state or federal courts." *TomTom, Inc. v. AOT Systems GmbH*, 893 F.Supp.2d 785, 788 (E.D.Va.2012) (internal quotation omitted). By creating jurisdiction in a federal forum, section 293 already remedied—with respect to foreign patentees—the precise problem that 4(k)(2) was enacted to fix. Therefore, exercising jurisdiction over ELM in the District of Massachusetts could be understood as inconsistent with the patent long-arm statute. This conclusion might preclude application of 4(k)(2), even if exercising jurisdiction was otherwise consistent with due process.

*Venmill Indus., Inc. v. ELM, Inc.*, 100 F. Supp. 3d 59, 72 n.9 (D. Mass. 2015).  This provides another basis supporting the Court's conclusion that Fed. R. Civ. P. 4(k)(2) is not applicable where the only basis for the exercise of personal jurisdiction over a foreign patentee who does not have sufficient contacts with any individual state are the bases set forth in 35 U.S.C. § 293.

Even if this Court had applied Fed. R. of Civ. P 4(k)(2) in the instant case, the Court would find that Plaintiffs fail to set forth a prima facie showing that jurisdiction pursuant to Rule 4(k)(2) is proper.  In confronting similar facts with respect to a challenge to personal jurisdiction, the United States District Court for the District of Massachusetts in *Venmill* explained:

> The exercise of jurisdiction under 4(k)(2) in cases like this would allow declaratory judgment plaintiffs to hale a foreign patentee into any federal district court in the country, solely on the basis that the patentee sent communications into the United States to make known their patent rights. This is precisely the type of scenario that the Federal Circuit has observed to be unreasonable and unfair, due to policy considerations unique to the national patent system.

*Venmill Indus., Inc. v. ELM, Inc.*, 100 F. Supp. 3d 59, 71 (D. Mass. 2015) (citing *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1206 (Fed.Cir.2003)).  The plaintiff in *Venmill* asserted that the defendant had "subjected itself to the jurisdiction of this Court under Fed. R. Civ. P. 4(k)(2) *by obtaining a United States patent* and enforcing its patent rights in the United States."  *Venmill Indus., Inc. v. ELM, Inc.*, 100 F. Supp. 3d at 71 (emphasis added).  The *Venmill* court further explained that "the Federal Circuit has never approved the exercise of jurisdiction under 4(k)(2) where, as here, the plaintiff seeks a declaration of non-infringement against a foreign patentee who has merely sent cease-and-desist communications into the country."  *Id.*

The act of obtaining a United States patent in the present case is not a sufficient contact within the United States such that jurisdiction is proper in any United States district court.  *See Venmill Indus., Inc. v. ELM, Inc.*, 100 F. Supp. 3d 59, 70 (D. Mass. 2015) ("Acquisition of a patent is a prerequisite to *any* attempt at patent enforcement, including a cease-and-desist letter. This

added connection to the national forum cannot constitute the type of 'other' enforcement activity that would make the exercise of jurisdiction reasonable and fair.").  Accordingly, this Court's exercise of personal jurisdiction pursuant to Fed. R. Civ. P. 4(k)(2) over Campbell would be unreasonable and unfair.  *See Venmill Indus., Inc. v. ELM, Inc.*, 100 F. Supp. 3d 59, 71.  For those reasons, this Court would not have personal jurisdiction over Campbell pursuant to Fed. R. Civ. P. 4(k)(2) if Rule 4(k)(2) was applicable in the instant case.  As discussed above, such a holding does not leave Plaintiffs without a forum to resolve this conflict.  Rather, 35 U.S.C. § 293 provides the appropriate forum for resolution of this action.

For the reasons discussed above, this Court's exercise of specific personal jurisdiction over Campbell would not comport with the requirements of due process, and, accordingly, this Court finds that it does not have personal jurisdiction over Campbell in this matter.

### 4.  Jurisdictional Discovery

Plaintiffs argue that jurisdictional discovery is necessary if this Court finds that Plaintiffs have failed to meet their burden of establishing a prima facie showing that this Court has personal jurisdiction over Campbell.  Opp'n 11; ECF No. 60.  In support of this argument, Plaintiffs assert that such discovery would include:

> Mr. Campbell producing documents concerning his correspondence with United States patent counsel and other documents related to prosecution of the '049 patent and his other business dealings in the United States related to the patent-in-suit and the development of the port boss claimed and disclosed in the patent that took place from 2006 through 2020. As Mr. Campbell has taken the position that most documents are no longer available to him or easily found by him, this discovery would also include the deposition of Mr. Campbell and Mr. Desmond McGrath, who has provided an affidavit on which Mr. Campbell relies.

Opp'n 11; ECF No. 60 (internal citations omitted).

None of the proposed discovery is directed toward establishing sufficient contacts with Pennsylvania, but rather seeks information respecting Campbell's contacts with the United States

as a whole.  As discussed above, 35 U.S.C. § 293 dictates which court may exercise personal jurisdiction over Campbell in this matter.  Accordingly, Campbell's contacts with the United States as a whole are irrelevant to the issue of this Court's personal jurisdiction.  As such, the extensive discovery proposed by Plaintiffs would constitute a waste of the parties' time and efforts and the Court's judicial resources.  In *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026 (3d Cir. 1997), the United States Court of Appeals for the Third Circuit explained that "jurisdictional discovery should be allowed unless the plaintiff's claim is 'clearly frivolous.'" *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997) (quoting *Nehemiah v. The Athletics Congress*, 765 F.2d 42, 48 (3d Cir.1985)).  The *Massachusetts Sch. of Law* court went on to hold that "[t]he district court found (at least by implication), and we agree, that MSL's jurisdictional claims were clearly frivolous."  *Massachusetts Sch. of Law at Andover, Inc.*, 107 F.3d at 1042.  Plaintiffs' jurisdictional claims are clearly frivolous in this action, and this Court shall not permit jurisdictional discovery.

### 5.  The Court's Prior Entry of Default Against Tranzgaz

Plaintiffs further argue that this Court has entered default judgment against Defendant Tranzgaz, and that Campbell has participated in this lawsuit for many months, and that both of these factors somehow mitigate against a finding that this Court lacks personal jurisdiction in this matter.  Opp'n 10; ECF No. 60.  With respect to Plaintiffs' assertion regarding Campbell's participation in this litigation, Campbell has consistently maintained that this Court lacks jurisdiction over him in this matter.  See ECF Nos. 13, 22, 49.  Further, this Court has not entered "default judgment" against Tranzgaz in this matter.  Rather, upon consideration of Plaintiffs' January 22, 2020 Request for Entry of Default Pursuant to Fed. R. Civ. P. 55(a) against Transgaz, Inc. (ECF No. 33), the Court directed the Clerk of Courts to enter *default, pursuant to Fed. R. Civ.*

*P. 55(a)*, against Tranzgaz based upon Transgaz's failure to plead.  February 13, 2020 Mem. Order of Ct. ¶¶ 1-2.

Because this case does not involve a claim for a sum certain, Plaintiffs are required, pursuant Fed. R. Civ. P. 55(b)(2), to apply to the Court for the entry of default judgment before a default judgment can be entered.  No party has requested the entry of default judgment in this matter.  "Upon entry of default against a defendant, the 'well-pleaded' facts alleged in the complaint (except those relating to damages) must be taken as true."  *D'Onofrio v. Il Mattino*, 430 F. Supp. 2d 431, 439 (E.D. Pa. 2006) (citing *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir.1990)).  In considering a motion for default judgment, a district court first must be satisfied that it "has both subject matter jurisdiction over the action *and personal jurisdiction over the defendant against whom the default judgment is sought*."  *Mercedes-Benz Fin. Servs. USA LLC v. Synergistiks, Inc.*, No. 3:18-CV-184, 2019 WL 481753, at *2 (W.D. Pa. Feb. 7, 2019) (emphasis added) (quoting *Harris v. Dollar General Corp.*, Civil Action No. 16-416, 2016 WL 2733227, at *1 (W.D. Pa. May 11, 2016)).  Plaintiffs do not set forth any allegations with respect to this Court's personal jurisdiction over Tranzgaz other than those discussed above regarding the Court's jurisdiction over Campbell.  For all of the reasons discussed above, a finding of personal jurisdiction as to Tranzgaz is unlikely.  In any event, the Court notes that it has not entered default judgment against Tranzgaz at this juncture.

### C. Transfer

Plaintiffs also argue that, should this Court find that it does not have personal jurisdiction over Campbell, the most proper remedy is transfer and not dismissal.  Opp'n 10; ECF No. 60. Campbell asserts that this Court is without authority to transfer this action if it determines it lacks personal jurisdiction.  Def.'s Resp. to Pls.' Br. Pursuant to Order 58 at 4, ECF No. 62.

Pursuant to 28 U.S.C. § 1631:

Whenever a civil action is filed in a court as defined in section 610 of this title or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court (or, for cases within the jurisdiction of the United States Tax Court, to that court) in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631. The Third Circuit has explained that a district court which lacks personal jurisdiction over a defendant can transfer a case pursuant to 28 U.S.C. § 1631. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 107 (3d Cir. 2009) (citing *Island Insteel Sys., Inc. v. Waters,* 296 F.3d 200, 218 n.9 (3d Cir. 2002)). Thus, transfer is appropriate in this action if: 1) the action could have originally been brought in the transferee forum; and 2) transfer is in the interest of justice. 28 U.S.C. § 1631.

The requirement that the action could have originally been brought in the transferee district is satisfied if "venue is proper in the transferee district and if the transferee court could have properly exercised personal and subject matter jurisdiction over the action." *Covelman v. Hotel St. Regis*, No. 14-5757 (RBK/KMW), 2016 WL 762661, at *4 (D.N.J. Feb. 25, 2016) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970)). Venue is proper over the foreign patentee Defendants in any district court pursuant to 28 U.S.C. § 1391(c)(3). *See In re HTC Corp.*, 889 F.3d 1349, 1356 (Fed. Cir. 2018) ("venue laws (as opposed to requirements of personal jurisdiction) do not restrict the location of suits against alien defendants, unless Congress has specifically provided otherwise."). Further, any other district court would clearly have subject matter jurisdiction over Plaintiffs' patent law claim pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1338. As discussed above, personal jurisdiction is appropriate in at least one district court pursuant

to 35 U.S.C § 293.  The Court must thus address the issue of which district court has personal jurisdiction over Campbell in this matter.

Plaintiffs aver that Campbell designated an agent for service pursuant Section 293.  In so arguing, Plaintiffs rely on documents, specifically a power of attorney and a correspondence address, that can be accessed on the United States Patent and Trademark Office's Public Patent Application Information Retrieval system ("Public PAIR").  *See* Opp'n 9; ECF No. 60 ("Defendants filed a power of attorney during prosecution of the patent-in-suit designating a United States entity that can receive service of papers concerning the patent-in-suit. (Ex. A, power of attorney naming a United States law firm in Chicago, Illinois as having power of attorney in connection with the patent, Exhibit C – USPTO Public Access Information Retrieval (PAIR) records showing correspondence address for the patent-in-suit as a United States address for service of process and other correspondence concerning the patent-in-suit).").

This Court has reviewed the documents relied upon by Plaintiffs, as well as the entire Image File Wrapper available for the '049 Patent on Public PAIR.  Initially, the power of attorney relied upon by Plaintiffs is explicitly titled "Power of Attorney to Prosecute Applications Before the USPTO," which provides that the practitioners associated with customer number 24978[9] are appointed:

> As attorney(s) or agent(s) to represent the undersigned before the United States Patent and Trademark Office (USPTO) in connection with any and all patent applications <u>assigned</u> only to the undersigned according to the UPSTO assignment records or assignments documents attached to this form in accordance with 37 CFR 3.73(c).

---

[9] Presumably, the Chicago, Illinois law firm (Greer, Burns & Crain, LTD) who is identified in the "Correspondence Address" on Public PAIR and who, based upon review of the information available on Public PAIR, seemingly pursued the '049 Patent on behalf of Defendants.  *See* 37 C.F.R. § 1.32(a)(5)(iii) ("Customer number" means a number that may be used to "[s]ubmit a list of patent practitioners such that those patent practitioners associated with the Customer Number would have power of attorney.").

Opp'n Ex. A at 1, ECF No. 60.  37 C.F.R. § 3.73 provides the way in which an assignee, in this case Tranzgaz, may take action before the USPTO with respect to a patent or patent application, pertinently by establishing ownership by way of submission of documentary evidence of assignment.  The power of attorney relied upon by Plaintiffs further provides:

> This collection of information is required by 37 CFR 1.31, 1.32. and 1.33.  The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application.

Opp'n Ex. A at 1, ECF No. 60.  37 C.F.R. § 1.31 provides that a patent applicant may give power of attorney "so as to be represented by one or more patent practitioners or joint inventors, except that a juristic entity (e.g., organizational assignee) must be represented by a patent practitioner even if the juristic entity is the applicant."  37 C.F.R. § 1.31.  "Patent practitioner" is defined by Section 1.32 as "a registered patent attorney or registered patent agent under § 11.6."  37 C.F.R. § 1.32(a)(1).  Section 1.32 defines power of attorney as "a written document by which a principal authorizes one or more patent practitioners or joint inventors to act on the principal's behalf."  37 C.F.R. § 1.32(a)(2).  In addition to relevant definitions, Section 1.32 provides requirements for a power of attorney and information regarding whom a power of attorney may name as a representative.  Notably, in defining power of attorney, 37 C.F.R. § 1.32 does not, in any way, reference litigation involving the patent or service of process.  The provisions cited by the power of attorney relied upon by Plaintiffs indicate that the power of attorney is exactly what the title implies it is, a "Power of Attorney to Prosecute Applications Before the USPTO," and not a written designation of an agent for service pursuant to 35 U.S.C. 293.

Section 1.32 also provides a definition for "customer number," which means, *inter alia*, a number that may be used to "[d]esignate the *correspondence address* of a patent application or patent such that the *correspondence address* for the patent application, patent or other patent

proceeding would be the address associated with the Customer Number." 37 C.F.R. § 1.32(a)(5)(i) (emphasis added).  Plaintiffs also rely on the correspondence address listed on Public PAIR for the '049 Patent, which lists the address of a Chicago, Illinois law firm, to support their assertion that Defendants designated an agent for service pursuant to 35 U.S.C. § 293.  Opp'n 9, ECF No. 60.

37 C.F.R. § 1.33 provides that a correspondence address is required when a patent application is filed, and further provides the types of correspondence which may be sent to the correspondence address.  37 C.F.R. § 1.33(a) provides that "[t]he Office will direct, or otherwise make available, all notices, official letters, and other communications relating to the application to the person associated with the correspondence address."  37 C.F.R. § 1.33(a).  37 C.F.R. § 1.33(c) provides that "[a]ll notices, official letters, and other communications for the patent owner or owners in a reexamination or supplemental examination proceeding will be directed to the correspondence address in the patent file."  37 C.F.R. § 1.33(c).  37 C.F.R. § 1.33 does not explicitly reference litigation, service of process, foreign patentees, or 35 U.S.C. § 293.  Thus, Section 1.33 clearly does not explicitly provide that the correspondence address constitutes a written designation of a United States resident on whom service of process may be served with respect to patent litigation involving a foreign patentee defendant.  Rather, the correspondence address is seemingly provided so that the United States Patent and Trademark Office may send the correspondence set forth above, which deal with applications for patents and reexamination or supplemental examinations of an issued patent, to an appropriate address.

Further, upon review of the Public PAIR information available for patents which were reviewed in cases similar to the present one, the Court is satisfied that a correspondence address and/or a power of attorney similar to that relied upon by Plaintiffs do not constitute written designations pursuant to Section 293.  *See Early Learning Res., LLC v. Sebel Furniture Ltd.*, No.

CIV. 10-6335 NLH JS, 2011 WL 4593775, at *6 n.2 (D.N.J. Sept. 30, 2011) (in a case involving

a patent which lists a Minneapolis, Minnesota law firm under the correspondence address, the

court explained that "[i]t seems clear that Sebel, as a foreign patentee owner, is subject to the

jurisdiction of the United States District Court for the District of Columbia in cases involving its

patent.").  *See also Venmill Indus., Inc. v. ELM, Inc.*, 100 F. Supp. 3d 59, 72 (D. Mass. 2015) (in

a case involving a patent which lists an Alexandria, Virginia law firm under the correspondence

address and features a similar power of attorney to the one filed during the prosecution of the '049

Patent, the court explained that personal jurisdiction would have been appropriate in the Eastern

District of Virginia, but seemingly not on the basis that an agent for service had been designated

there, but rather because, "[b]y registering a patent with the United States Patent and Trademark

Office—located in the Eastern District of Virginia—a foreign patentee 'purposefully avails itself

of the benefits and protections patent registration in this country affords.'").

     For the reasons discussed above, the Court concludes that the correspondence address

and/or the power of attorney relied upon by Plaintiffs do not constitute "a written designation [by

a foreign patentee] stating the name and address of a person residing within the United States on

whom may be served process or notice of proceedings affecting the patent or rights thereunder."

Because Campbell has not designated an agent within the United States to receive service pursuant

to 35 U.S.C. § 293, Section 293 provides that the United States District Court for the Eastern

District of Virginia "shall have the same jurisdiction to take any action respecting the patent or

rights thereunder that it would have if the patentee were personally within the jurisdiction of the

court."  Because the United States District Court for the Eastern District of Virginia has personal

jurisdiction over Defendants, and because it has subject matter over Plaintiffs' patent law claim

and venue is proper in that District, this action could have originally been brought in United States District Court for the Eastern District of Virginia.

The final issue this Court must address in determining whether transfer is appropriate is whether such a transfer is in the interest of justice.  The Court concludes that transfer is in the interest of justice.  Initially, and perhaps most obviously, there are two Defendants in this matter. As Campbell has been reminded on numerous occasions, he cannot represent the interests of Tranzgaz before this Court.  *See Rowland v. California Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 201–02 (1993) ("It has been the law for the better part of two centuries, for example, that a corporation may appear in the federal courts only through licensed counsel."). Accordingly, Campbell's "Motion for Dismissal" may seek relief only on behalf of Campbell. Were this Court to Dismiss this action without prejudice as to only Campbell, Plaintiffs could file an action in the Eastern District of Virginia seeking the same relief in that action as they seek against Tranzgaz in this District, namely correction of the '049 patent to include Plaintiffs Mackay and Hewson as co-inventors.[10]

More importantly, as discussed above, Plaintiffs do not set forth any allegations with respect to this Court's personal jurisdiction over Tranzgaz other than those set forth with respect to Campbell.  As such, the record reflects that Plaintiffs are unlikely to be able to establish that

---

[10] The Court notes, with respect to any statute of limitations and/or laches concerns, the United States Court of Appeals for the Federal Circuit has explained:

> Neither 35 U.S.C. § 256 nor 37 C.F.R. § 1.324 requires that an omitted inventor of an issued patent must diligently bring a lawsuit to correct inventorship or be forever barred from doing so.  Absent any statutory or regulatory requirement of diligence in bringing legal action to correct inventorship of an issued patent, it was error to hold that Dr. Stark's action to correct inventorship was barred for lack of diligence as a matter of law.  Whether diligent action is required in a particular case must be determined on the facts of that case.

*Stark v. Advanced Magnetics, Inc.*, 29 F.3d 1570, 1575 (Fed. Cir. 1994).  The Plaintiffs in this case seek relief pursuant to 35 U.S.C. § 256.  The Court does not cite the above-quoted language to offer a preliminary determination as to any such defense, but rather to illustrate that any action filed in the Eastern District of Virginia against Campbell could, in theory, proceed while the Plaintiffs pursued relief against Tranzgaz in this action.

this Court possesses personal jurisdiction over Tranzgaz.[11]  For that reason, transferring this entire litigation would allow the action to proceed in the most judicially efficient manner possible, and eliminate any risk of inconsistent decisions.  Further, the United States District Court for the Eastern District of Virginia is seemingly the only forum wherein the entirety of this litigation can be addressed.  For that reason alone, transfer of this action in its entirety to the United States District Court for the Eastern District of Virginia is in the interest of justice.  *See Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466–67 (1962) (applying 28 U.S.C.A. § 1406(a), but employing a similar "interest of justice" analysis and explaining that "[t]he section is thus in accord with the general purpose which has prompted many of the procedural changes of the past few years—that of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits.").  Further, transferring the case will prevent Plaintiffs from paying another filing fee, and that factor also weighs in favor of transfer.  *See Covelman v. Hotel St. Regis*, No. 14-5757 (RBK/KMW), 2016 WL 762661, at *5 (D.N.J. Feb. 25, 2016) ("Doing so would prevent Plaintiffs from paying another filing fee, and it would prevent the statute of limitations from resuming.  These factors indicate that a transfer is in the interest of justice.").

Because the Court finds that it does not have personal jurisdiction over Campbell, the Court shall not address his contentions regarding whether Tube-Mac has stated a claim against Campbell and whether the United States District Court for the Western District of Pennsylvania is an appropriate venue for this action.

## V.  Conclusion

For the reasons discussed above, this Court lacks personal jurisdiction over Campbell.  The Court finds, however, that the United States District Court for the Eastern District of Virginia is

---

[11] The United States District Court for the Eastern District of Virginia has personal jurisdiction over Tranzgaz, who is alleged to be an assignee of the '049 Patent (Am. Compl. ¶ 13, ECF No. 11).

an appropriate venue for this action, has subject matter jurisdiction over Plaintiffs' claim, and has personal jurisdiction over Defendants.  Accordingly, this action could have originally been brought in that forum.  Further, transfer to the Eastern District of Virginia is in the interest of justice.  For those reasons, this Court will transfer this action to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1631.  Accordingly, Campbell's Motion for Dismissal (ECF No. 49), which seeks dismissal of Plaintiffs' claims against him, shall be denied.  An appropriate Order of Court follows.

BY THE COURT:

s/*Robert J. Colville*
Robert J. Colville
United States District Court Judge

DATED: April 20, 2020

cc/ecf: All counsel of record